1

2

3

4

5

6

7

8             **IN THE UNITED STATES DISTRICT COURT**

9           **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   JOSEPH BECKER,                    No. 2:12-CV-3040-KJM-CMK-P

12              Plaintiff,

13        vs.                          <u>FINDINGS AND RECOMMENDATIONS</u>

14   K. FANG, et al.,

15              Defendants.

16   _____/

17              Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to

18   42 U.S.C. § 1983.  Pending before the court is plaintiff's motion for temporary restraining order

19   (Doc. 2).  Prior to the formal completion of service, the court requested a response to plaintiff's

20   motion. Defendants filed the requested response, providing the court with additional information

21   as to plaintiff's mental health care, including relevant treatment notes (Doc. 16).  Plaintiff has

22   also filed a reply to the defendants' response (Doc. 19), and has requested leave of court to file a

23   supplemental response (Docs. 22, 23. 24).

24              Plaintiff moves for a temporary restraining order, requesting that he be allowed to

25   continue in the Enhanced Outpatient Program (EOP) due to his suicidal ideation, severe

26   depression, and post traumatic stress disorder.  Plaintiff claims the defendants have removed him

1

1   from the EOP level of care, knowing that so doing will jeopardize plaintiff's mental health

2   condition.

3             The legal principles applicable to requests for injunctive relief, such as a

4   temporary restraining order or preliminary injunction, are well established.  To prevail, the

5   moving party must show that irreparable injury is likely in the absence of an injunction.  See

6   Stormans, Inc. v. Selecky, 586 F.3d 1109, 1127 (9th Cir. 2009) (citing Winter v. Natural Res.

7   Def. Council, Inc., 129 S. Ct. 365 (2008)).  To the extent prior Ninth Circuit cases suggest a

8   lesser standard by focusing solely on the possibility of irreparable harm, such cases are "no

9   longer controlling, or even viable."  Am. Trucking Ass'ns, Inc. v. City of Los Angeles, 559 F.3d

10   1046, 1052 (9th Cir. 2009).  Under Winter, the proper test requires a party to demonstrate: (1) he

11   is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of an

12   injunction; (3) the balance of hardships tips in his favor; and (4) an injunction is in the public

13   interest.  See Stormans, 586 F.3d at 1127 (citing Winter, 129 S. Ct. at 374).

14             Here, plaintiff argues he will suffer irreparable harm based on his risk of suicide;

15   he has no adequate remedy at law as he has exhausted his administrative remedies; is likely to

16   succeed on the merits of his claims because threats of suicide are serious mental health needs; the

17   balance of hardships tips in his favor due to his suffering from removal of EOP and no hardship

18   on the defendants in allowing him to continue; and the public interest will be served by requiring

19   prison officials to obey the law.  In support of his motion, plaintiff provides the court with his

20   administrative grievance, which was denied at the Third Level Appeals; a Mental Health

21   Treatment Plan, dated October 5, 2011; a Mental Health Treatment Plan, dated January 4, 2012;

22   an Interdisciplinary Progress Notes, dated January 4, 2012, from the ASU Interdisciplinary

23   Treatment Team Meeting; a copy of his scheduled treatment, dated December 7, 2012; an

24   Informational Chrono, dated November 2, 2010; a copy of his habeas corpus decision from the

25   Southern District of California; and a copy of a complaint filed against him.

26   / / /

1        Plaintiff's 2010 administrative grievance, which was partially granted at the first

2  and second levels, continued plaintiff's EOP placement until his next quarterly review.  The third

3  level determined plaintiff was receiving the treatment deemed medically necessary, and denied

4  his appeal.  In the October 4, 2011, treatment plan, Dr. Fang noted: "PI has ongoing mental

5  illness of anxiety, depression, and mood instability needing EOP LOC.  However, PI's

6  documentation indicates no suicidal attempt that would need higher LOC, i.e. DMH referral.  On

7  the other hand, if PI's LOC is dropped to CCCMS, he is at risk of decompensating."  (Pl.

8  Motion, Exh. B, Doc. 2 at 20).  In the January 4, 2012, treatment plan, D. Bressi, Psy.D., noted:

9  "P/I has on-going mental disorder of anxiety, depression, and mood instability.  P/I maintains

10  without further decompensation or suicidality at EOP LOC but would likely decompensate with

11  less structured and less routine mental health support.  As P/I is currently in ASU, which is

12  recognized as a typically stressful environment for the incarcerated, the recommendation is to

13  continue at this LOC."  (Pl. Motion, Exh. C, Doc. 2 at 23).  Finally, the January 4, 2012, ASU

14  Interdisciplinary Treatment Team Meeting notes indicate that plaintiff refused attendance at his

15  treatment plan review, was responding well to treatment, continued to struggle with his mood

16  and affect, which was exacerbated by his ASU placement, he refuses medication but benefits

17  from his one-on-one and group sessions.  It was also noted that plaintiff consistently and

18  expressly denied suicidal ideation, suicidal attempts, and homicidal ideation.  It was determined

19  plaintiff was to continue in EOP as he would likely decompensate with less structured and less

20  routine mental health support.  (Pl. Motion, Exh. C, Doc. 2 at 25).

21        Defendants oppose the motion on several basis.  First, defendants argue that

22  plaintiff has not demonstrated that an injunction is necessary to prevent irreparable harm.

23  Second, defendants contend that he has failed to show he is likely to succeed on the merits of his

24  claims.   In support of their contentions, defendants have provided the court with

25  Interdisciplinary Progress Notes, dated December 11, 2012, from the ASU Interdisciplinary

26  Treatment Team Meeting; Mental Health Treatment Plan, dated December 11, 2012; an

Interdisciplinary Treatment Team Level of Care Decision, dated December 11, 2012; a Mental Health Placement Chrono, dated December 11, 2012; a Suicide Risk Evaluation, dated December 11, 2012; a Mental Health Referral Chrono, dated December 11, 2012; Interdisciplinary Progress Notes, dated December 11, 2012, by J. Scott, Psy.D.; Interdisciplinary Progress Notes, dated December 11, 2012, by Dr. Fang; a second Suicide Risk Evaluation, dated December 11, 2012; Mental Health Placement Chrono, dated December 11, 2012 (duplicate); Notice of Pending CDC-115, dated December 31, 2012; Subsequent Administrative Placement Review, dated December 6, 2012; and a declaration by defendant Fang.

The exhibits the defendants submit show that on December 12, 2012, plaintiff's EOP placement was reevaluated by the Interdisciplinary Treatment Team (IDTT). The progress notes states "IP reported no current suicidal or homicidal ideation. Recommendation was to change his LOC from EOP to CCCMS. IP was informed during the IDTT about [t]he change of LOC due to he was no longer benefit from EOP. IP has not taken medication for over a year now, for the last six months since arrived to MCSP ASU for Out to Court, IP had not major mental health issue and or major needs for mental health intervention. There were a few incidents that IP had verbalized that he was feeling suicidal. Those incidents that IP had voiced suicidal ideation were when IP was disciplined for behavior problems . . . . IP's suicidal ideation and suicidal threat in the last six months appear to be conditional." (Def. Response, Doc. 16, at 10 (errors in original). The team's decision was to transfer plaintiff's level of care from EOP to Correctional Clinical Case Management Services (CCCMS). Following that decision, plaintiff apparently reported thoughts of suicidal ideation again. He was then seen and evaluated by J. Scott, Psy.D. The progress notes from that evaluation states that plaintiff "was approached cell-side and began complaining about the fact that he had been removed from EOP earlier in the day by his PC and how he felt it was retaliatory . . . . He avoided all questioning related to his claims of suicide making it impossible to evaluate him." (Def. Response, Doc. 16, at 19). Plaintiff was thereafter seen and evaluated by his primary clinician, defendant Fang. Progress notes from Dr.

1  Fang's evaluation state "IP stated that he was angry and upset that his LOC was changed to

2  CCCMS and he did not agree that he should be CCCMS.  IP denied current suicidal ideation,

3  suicidal plan, or homicidal ideation.  IP said he wanted to hear from this writer the reasons he

4  was made CCCMS.  This writer explained to IP that based on EOP and CCCMS criteria, he did

5  not meet criteria to be EOP, yet he would benefit to be CCCMS.  IP did not agree with the

6  decision and the explanation, however, he said he was not suicidal and he rather go back to his

7  cell to start on writing to the federal judge."  (Def. Response, Doc. 16, at 20).  Dr. Fang cleared

8  plaintiff to return to his cell as he reported no suicidal ideation or plan, nor did he show any sign

9  of psychotic symptoms and reported no psychosis.  Finally, Dr. Fang submitted a declaration in

10  support of the defense opposition, documenting the incident following the December 11, 2012,

11  IDTT Meeting.  Dr. Fang states "The teams decision was based on several facts: (1) Becker had

12  not taken medication for over a year; (2) Becker's lack of major mental health issues for six

13  months; and (3) Becker's absence of mental health intervention for six months.  In addition, any

14  suicidal ideations presented by Becker were associated with disciplinary actions taken against

15  him."  (Def. Response, Doc. 16, at 28).

16        Plaintiff further contends[1] that he has now been removed from CCCMS, and is not

17  receiving any mental health treatment.  In addition, he argues that his current provider, Dr.

18  Fisher, has abandoned his treatment.

19        As stated above, in order for the court to grant plaintiff's request for a temporary

20  restraining order, plaintiff must show that he is likely to succeed on the merits of his claims, is

21  likely to suffer irreparable harm, the balance of hardships tips in his favor, and an injunction is in

22  the public interest.  All four conditions must be met prior to an injunction being issued.  Here,

23

24  [1]    In addition to his reply to the defendants' response, plaintiff has also filed a
motion to be allowed to file a supplemental response.  In the supplemental response, plaintiff

25  argues he has now been removed from all mental health treatment, and submits a Mental Health
Removal Chrono he claims was signed by Dr. Dahl and given to him on March 13, 2013.  The

26  Chrono is not dated, but even assuming  it is the current Chrono, removing plaintiff from mental
health treatment does not alter the analysis herein.

1   defendants contend plaintiff has not met his burden of showing either the likelihood of

2   irreparable injury or the likelihood of success on the merits.

3            As to the merits of the case, plaintiff claims that the defendants violated his

4   Eighth Amendment rights by removing him from the EOP level of care without regards to his

5   medical needs, and that decision was made deliberately with the knowledge that he will

6   decompensate and be exposed to the risk of suicide.  He has provided some support for his

7   position, including that he has a history of suicidal ideation, attempts and threats, and that his

8   providers have recommended he be assigned to EOP level of care.

9            The treatment a prisoner receives in prison and the conditions under which the

10  prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel

11  and unusual punishment.  See Helling v. McKinney, 509 U.S. 25, 31 (1993); Farmer v. Brennan,

12  511 U.S. 825, 832 (1994).  The Eighth Amendment "embodies broad and idealistic concepts of

13  dignity, civilized standards, humanity, and decency."  Estelle v. Gamble, 429 U.S. 97, 102

14  (1976).  Conditions of confinement may, however, be harsh and restrictive.  See Rhodes v.

15  Chapman, 452 U.S. 337, 347 (1981).  Nonetheless, prison officials must provide prisoners with

16  "food, clothing, shelter, sanitation, medical care, and personal safety."  Toussaint v. McCarthy,

17  801 F.2d 1080, 1107 (9th Cir. 1986).  A prison official violates the Eighth Amendment only

18  when two requirements are met: (1) objectively, the official's act or omission must be so serious

19  such that it results in the denial of the minimal civilized measure of life's necessities; and (2)

20  subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of

21  inflicting harm.  See Farmer, 511 U.S. at 834.  Thus, to violate the Eighth Amendment, a prison

22  official must have a "sufficiently culpable mind."  See id.

23           Deliberate indifference to a prisoner's serious illness or injury, or risks of serious

24  injury or illness, gives rise to a claim under the Eighth Amendment.  See Estelle, 429 U.S. at

25  105; see also Farmer, 511 U.S. at 837.  This applies to physical as well as dental and mental

26  health needs.  See Hoptowit v. Ray, 682 F.2d 1237, 1253 (9th Cir. 1982).  An injury or illness is

6

1  sufficiently serious if the failure to treat a prisoner's condition could result in further significant

2  injury or the "unnecessary and wanton infliction of pain." McGuckin v. Smith, 974 F.2d 1050,

3  1059 (9th Cir. 1992); see also Doty v. County of Lassen, 37 F.3d 540, 546 (9th Cir. 1994).

4  Factors indicating seriousness are: (1) whether a reasonable doctor would think that the condition

5  is worthy of comment; (2) whether the condition significantly impacts the prisoner's daily

6  activities; and (3) whether the condition is chronic and accompanied by substantial pain. See

7  Lopez v. Smith, 203 F.3d 1122, 1131-32 (9th Cir. 2000) (en banc).

8         The requirement of deliberate indifference is less stringent in medical needs cases

9  than in other Eighth Amendment contexts because the responsibility to provide inmates with

10  medical care does not generally conflict with competing penological concerns. See McGuckin,

11  974 F.2d at 1060. Thus, deference need not be given to the judgment of prison officials as to

12  decisions concerning medical needs. See Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir.

13  1989). The complete denial of medical attention may constitute deliberate indifference. See

14  Toussaint v. McCarthy, 801 F.2d 1080, 1111 (9th Cir. 1986). Delay in providing medical

15  treatment, or interference with medical treatment, may also constitute deliberate indifference.

16  See Lopez, 203 F.3d at 1131. Where delay is alleged, however, the prisoner must also

17  demonstrate that the delay led to further injury. See McGuckin, 974 F.2d at 1060.

18         Negligence in diagnosing or treating a medical condition does not, however, give

19  rise to a claim under the Eighth Amendment. See Estelle, 429 U.S. at 106. Moreover, a

20  difference of opinion between the prisoner and medical providers concerning the appropriate

21  course of treatment does not give rise to an Eighth Amendment claim. See Jackson v. McIntosh,

22  90 F.3d 330, 332 (9th Cir. 1996).

23         In this instance, plaintiff has provided the court with evidence to support that he

24  has been receiving the EOP level of care, and has a history of suicidal thoughts. Thus, there is

25  some support for his claim that he needs to remain in EOP, and his removal from that

26  programming could be detrimental. However, the defendants counter that evidence with

1    documentation as to why plaintiff was removed from EOP, including the declaration from Dr.

2    Fang that such decision was based on plaintiff's lack of major mental health issues, need for

3    medication and/or intervention.  Thus, based on the information currently before the court, it

4    does not appear the decision to remove plaintiff from EOP was done with the necessary purpose

5    of inflicting harm.  Rather, it appears there is at best a difference of opinion, which is insufficient

6    to rise to the level of an Eighth Amendment violation.  Whether a jury would agree, and whether

7    there will be additional information available later in this case to sway the jury otherwise,

8    remains to be determined.  However, at this early stage of these proceedings, and based on the

9    evidence submitted with the motion, it does not appear that plaintiff will be able to show

10   deliberate indifference.  Thus, plaintiff has not met his burden that it is likely he will succeed on

11   the merits of his claim.

12          The undersigned could stop the analysis there, as the moving party must meet all

13   four requirements before a temporary restraining order can issue.  However, as the parties also

14   address the irreparable injury, the undersigned will as well.  There is no question that if plaintiff

15   was to succeed in committing suicide, that would be irreparable.  However, there are procedures

16   in place at the prison to eliminate that possible outcome.  As the parties have shown the court,

17   when plaintiff has threatened suicide, he is evaluated by his clinician.  He may then be put on

18   suicide watch if there is deemed a real threat.  However, pursuant to the information before the

19   court, plaintiff has threatened suicide numerous times.  The last time he did so was following the

20   committee's decision to remove him from EOP.  However, when he was evaluated, he

21   acknowledged that he was not in fact suicidal, and wanted to be returned to his cell and not put

22   on suicide watch.  Plaintiff's past behavior of crying wolf does not support his contention that

23   suicide is imminent.  In addition, as plaintiff is in administrative segregation, he is reevaluated

24   regularly.  If plaintiff starts to decompose, his EOP status will similarly be evaluated, and there

25   would be no reason plaintiff could not be put back on EOP status if the situation so required.

26   Therefore, the undersigned finds plaintiff has not shown a likelihood of irreparable harm.

Based on the foregoing, the undersigned recommends that:

    1.      Plaintiff's motion to supplement his reply (Doc. 22) be granted; and

    2.      Plaintiff's motion for a temporary restraining order (Doc. 2) be denied;

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with these findings and recommendations, any party may file written objections with the court.  Responses to objections shall be filed within 14 days after service of objections.  Failure to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED:  August 5, 2013

CRAIG M. KELLISON
UNITED STATES MAGISTRATE JUDGE